**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,            :
                                     :
                                     :
         v.                          :       CASE NO. 1:15-CR-00263
                                     :
REGINALD L. LOMAX JR.,               :
         Defendant

*M E M O R A N D U M*

Pending before the Court is Defendant's motion (Doc. 21) to suppress physical evidence.  The Court held a suppression hearing on March 3, 2016, and the parties have since completed briefing.  (Docs. 22, 42, & 43).  Accordingly, Defendant's motion is ripe for review.

*I.    Facts*

At the suppression hearing, the Court heard testimony from a single Government witness: Officer James Knarr ("Knarr") of the York City Police Department.  Defendant also testified and called two witnesses:  Officer Richard Kehler ("Kehler") of the York City Police Department and Shakala Handy.  The following recitation of facts constitutes the Court's essential findings.

On December 14, 2014, at approximately 12:44 p.m., Knarr was dispatched to 118 South Queen Street (the "Residence"), in York, Pennsylvania.  (Doc. 41 at 4, 11).  Knarr was informed that there had been a domestic-violence incident involving a female, Laquaya Walker ("Walker"), who had been struck.  (Id. at 4, 5).  When Knarr arrived at the Residence, an ambulance was leaving with Walker, en route to York Hospital.

Knarr followed the ambulance and, at the hospital, Walker told him that she had been in an argument with Defendant, her boyfriend, who punched her in the mouth.  (Id. at 5).  Walker also told Knarr that she lived at the Residence with her mother, Linda

Stevenson ("Stevenson").  (Id. at 5, 33).  When Knarr finished speaking with Walker, he began heading back to the police station to complete a police report and file charges against Defendant for simple assault.  (Id. at 5).

On the way to the police station, however, Knarr heard a 9-1-1 dispatcher again requesting police assistance at the Residence, for the second-floor apartment.  (Id. at 6, 24). The dispatch, which originated around 1:37 p.m., further provided that Defendant: was back at the residence; had been asked to leave by Stevenson, but was refusing to do so; and had said he had a gun in his pocket.  (Id. at 6, 11, 24).  Knarr, who was only two blocks away, changed course and headed back towards the Residence.  (Id. at 6, 24).  He would be the first officer to arrive.

Less than one block away from the Residence, Knarr parked his vehicle and waited for additional officers before entering.  (Id. at 6).  Seconds later, Kehler arrived.  (Id. at 6, 11).  Once Kehler arrived, Knarr walked up to the front door of the Residence and peered inside.  (Id. at 6).  The front door was already open and Knarr did not see anyone. (Id. at 6, 12).  As Kehler "c[ame] down the street," Knarr entered the Residence with his gun drawn.  Knarr did not have any kind of warrant.  (Id. at 7, 14-15).

Inside the Residence, there was a landing and a set of stairs leading to the second-floor apartment.  (Id. at 7).  The door to the apartment, similar to the front door to the Residence, was already open.  (Id. at 6-7, 12).  Ultimately, Knarr ascended the stairs inside the Residence and entered the apartment.  (Id. at 7).  Down a hallway, Knarr saw a woman. (Id.).  The woman made eye contact with Knarr and then vanished from his sight.  (Id. at 7-8).  Knarr did not (attempt to) talk with the woman; instead, he "walked into the second

doorway" where Defendant was standing alone in a small room, with his hands in the front pockets of a jacket.  (See id. at 8, 10).

Upon seeing Defendant in said room, Knarr trained his gun on Defendant and told him to slowly remove his hands from the jacket pockets.  (Id. at 8).  Defendant complied.  (Id.).  Knarr then told Defendant to turn around and put his hands behind his back.  (Id.).  In response to Knarr's commands, Defendant took off his jacket, laid it beside him, and further complied.  (Id.).  Knarr subsequently handcuffed Defendant, who was within reach of the jacket.  (Id. at 8, 9-10).

At no point did Knarr see a gun in Defendant's pants pockets or waistband, or on his person.  (Id. at 8-9).  However, when Knarr reached down and picked up Defendant's jacket, he felt a handgun in the front pocket.  Knarr consequently pulled the gun out of the pocket and verified it.  (Id. at 9).  In the other jacket pocket, Knarr felt and discovered drugs.  (Id.).  Knarr then set the jacket aside and patted Defendant down.  (Id.).  By that time, Kehler, who was at least 30 seconds behind Knarr, had come into the "relatively small room."  (Id. at 9, 25-26).  Kehler did not see Defendant until he had already been handcuffed and was no longer wearing any jacket.  (Id. at 25-26).  Nonetheless, Kehler recalled seeing the jacket inside of the room.  (Id. at 26).

Eventually, Knarr and Kehler escorted Defendant out of the Residence, and the items discovered in Defendant's jacket pockets were secured.  (Id. at 9, 27, 28).  On November 4, 2015, a Federal Grand Jury returned a three-count indictment against Defendant, charging him with being a felon in possession of a firearm; possessing cocaine with the intent to distribute; and possessing a firearm in furtherance of a drug trafficking crime.  (Doc. 1).  In moving to suppress the physical evidence in this case, Defendant

contends that: (1) the warrantless search of his jacket was unreasonable and cannot be justified as a search incident to an arrest; (2) the "knock-and-announce" rule was violated; and (3) the warrantless entry into the Residence was unreasonable.  (Doc. 21 at ¶ 12; Doc. 41 at 3).

> ## II.    Discussion

> ### A.  The Warrantless Entry into the Residence

Defendant argues that the warrantless entry into the Residence was unreasonable.  (Doc. 43 at 11).  The Government does not assert a particular argument in opposition; however, Defendant's contention is meritless.

While "[i]t is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment[1] is directed,'" *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984)(quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)), "[e]xigent circumstances justify a warrantless entry where 'officers reasonably . . . believe that [there] is [a]n imminent danger,' *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996), and that they must act to avert the danger." *United States v. Coleman*, 68 F. App'x 300, 303 (3d Cir. 2003).  In other words, a warrantless entry into a home, or residence, under such circumstances is reasonable, and "reasonableness" is the ultimate touchstone of the Fourth Amendment.  *Riley v. California*, 134 S.Ct. 2473, 2482 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

---

[1]    The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. Amend IV.

To determine whether an exigent circumstance of the kind existed, this Court must review the facts and reasonably-discoverable information available at the time Knarr entered the Residence. The Court must also consider the totality of the circumstances that he faced. *United States v. Jones*, 155 F. App'x 62, 65 (3d Cir. 2005)(citing *Estate of Smith v. Marasco*, 318 F.3d 497, 518 (3d Cir. 2003)).

Here, the facts demonstrate that Knarr had a reasonable belief of an imminent danger posed by Defendant and that he needed to enter the Residence to avert said danger. Indeed, although his subjective intent is irrelevant, we nonetheless know that Knarr had a belief that Defendant posed an imminent danger as evidenced by his entry into the Residence with his gun drawn. Furthermore, the facts demonstrate the reasonableness of Knarr's belief given that he (Knarr) had cause to believe that Defendant had acted with violence less than an hour earlier and now claimed to have a gun in response to being asked to leave the Residence. As well, prior to Knarr's entry into the Residence, the front door and the door to the second-floor apartment were left opened, yet no one was in sight. Thus, there was no objective evidence to suggest that any imminent threat posed by Defendant had dissipated. The warrantless entry was reasonable.

*B. Knarr's Failure to Knock and Announce*

Alternatively, Defendant argues the physical evidence should be suppressed because Knarr did not knock and announce his presence. (Doc. 43 at 11-12). The Government does not set forth any particular argument rebutting this contention. As before, though, Defendant's contention is meritless. To that end, it was unnecessary for Knarr to have complied with the knock-and-announce rule given the exigent circumstances that permitted him to enter the Residence without a warrant. See *Hudson v. Michigan*, 547 U.S.

586, 589 (2006) ("It is not necessary [to knock and announce] when 'circumstances presen[t] a threat of physical violence' . . . .")(quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997)).

### *C. The Search of Defendant's Jacket*

Finally, Defendant's main contention is that the search of his jacket cannot be justified as a search incident to arrest because the search was not contemporaneous with the arrest; he had already been handcuffed; and the jacket was not within his immediate control. (Doc. 22 at 3-4; Doc. 43 at 9).

"'Among the exceptions to the [Fourth Amendment's] warrant requirement is a search incident to a lawful arrest. The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.'" *United States v. Matthews*, 532 F. App'x 211, 217-18 (3d Cir. 2013)(quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)(internal citations omitted)). Under this exception,

> "[P]olice may search incident to arrest only the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'" *Id.* at 335 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). However, "[o]nce law enforcement officers have [exclusive control over] luggage or other personal property not immediately associated with the person of the arrestee . . . , and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *United States v. Chadwick*, 433 U.S. 1, 15 (1977) abrogated on other grounds by *California v. Acevedo*, 500 U.S. 565 (1991).
>
> In *United States v. Shakir*, 616 F.3d 315 (3d Cir. 2010), we held that as long as there is "a reasonable possibility" that an arrestee could destroy evidence or gain access to a weapon in the container or area being searched, the search is permissible. *Id.* at 321. Although this standard is a "lenient" one, it "requires something more than the mere theoretical possibility that a suspect might access a weapon or evidence." *Id.* "In determining whether an object is conceivably accessible to the arrestee, we are to assume that he was neither an acrobat nor Houdini." *United*

6

> *States v. Myers*, 308 F.3d 251, 267 (3d Cir. 2002) (internal quotation
> marks and alteration omitted).

*Matthews*, 532 F. App'x at 218; see *United States v. Brown*, No. 12-23, 2013 WL124280, at *5 (D. Del. Jan. 8, 2013)("The Third Circuit has explained that, even when the suspect is handcuffed, [a search incident to arrest] is permissible if 'under all the circumstances, there remains a reasonable probability that the arrestee could access a weapon . . . .'")(quoting *Shakir*, 616 F.3d at 321).

Here, Defendant does not challenge the lawfulness of the arrest. With respect to the search of the jacket, the facts demonstrate that Knarr searched the jacket contemporaneously with the arrest, in proximity to the time that he placed Defendant into handcuffs. Indeed, no facts suggest that Knarr had left the room then returned to search the jacket; removed Defendant from the jacket's proximity; or waited any length of time before searching the jacket. Moreover, at the time of the search, the facts demonstrate that Knarr was by himself with Defendant, in a small room, and the jacket was within Defendant's reach. What's more, Knarr did not see or find a gun on Defendant's person, after Defendant had just taken off the jacket and set it aside prior to being handcuffed. Under these facts and circumstances, Knarr's warrantless search of Defendant's jacket was reasonable because it was incident to a lawful arrest. Cf. *United States v. Meyers*, 308 F.3d 251, 275-74 (3d Cir. 2002)(explaining why the warrantless search would not be sustained as a search incident to arrest); *Matthews*, 532 F. App'x at 214, 218 (same).

*III.*     *Conclusion*

Defendant's motion to suppress will be denied.  Knarr's warrantless entry into the Residence and search of Defendant's jacket were justified.  As well, Knarr's failure to knock and announce his presence does not entitle Defendant to the suppression of evidence.  An appropriate Order will be issued.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

**Date Signed**: May 4, 2016